## Hostetter's Appeal.

By agreement of the parties, which was made an order of court, two cases were referred to three masters, " to take testimony and report the facts, with the form of a decree, under and in pursuance of the agreement herewith filed." The agreement also stipulated that the awards of the masters should be final, " without exception or appeal." *Held*, that the awards of the masters were conclusive, and that appeals therefrom must be quashed.

November 12th and 13th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   GREEN, J., absent.

Appeal from the Court of Common Pleas, No. 1, of *Allegheny county*: Of October and November Term 1879, Nos. 1 and 2. In equity.

Appeal of David Hostetter from the decision of the court in certain proceedings in equity.   The case will be found stated in the opinion of this court.   [See also Lewis's Appeal, 10 Norris 359.— REP.]

*John Barton, A. H. Clarke* and *Thomas M. Marshall,* for appellant.

*Hampton & Dalzell* and *Robert Woods,* for appellees.

Chief Justice SHARSWOOD delivered the opinion of the court, January 5th 1880.

These are appeals from the decree of the Court of Common Pleas, No. 1, of Allegheny county, in two equity causes, in which the appellant was the complainant.   The appellees have moved the court to quash these appeals on the ground that the appellant has precluded himself by his agreement from such appeal.   The question is whether the agreement to that effect, which without dispute he entered into in the court below, is binding upon him.   That agreement, though originally in the form of a submission to arbitration, was afterward, with the consent of all the parties, made an order of the court below in which the causes were pending, referring the cases to three masters, " to take testimony and report the facts with the form of a decree, under and in pursuance of the agreement herewith filed." This agreement, adopted by the court and in effect made a part of its order, stipulated that the awards of the referees or masters should be final " without exception or appeal." It cannot be questioned that the court below, with the consent of all the parties, had power to make the order of April 9th 1875.   The effect of it undoubtedly was very much to enlarge the jurisdiction and powers which the masters would have had under a simple reference to them as masters in chancery.   They were no longer confined to the matters in issue in the bills and answers.

The agreement, after reciting that the parties were desirous of compromising and finally settling all differences between them, either as firm or individuals, in the premises, witnessed, "that the parties, in compromise and settlement of all matters in dispute or at variance between them have agreed, and by this agreement, do agree to and with each other to refer unto J. H. Miller, F. M. Magee and J. F. Slagle, as arbitrators and referees, for their joint arbitrament and decision, all controversies of whatsoever kind or nature which have arisen or which may arise by reason of the premises, as well as all collateral controversies between said parties or any of them, the decision of which may be necessary for the full and final settlement of the matters in issue in said cases, or in any manner connected therewith; and said parties hereby further agree to submit to the award of said arbitrators or a majority of them, without exception or appeal, hereby respectively binding themselves, their heirs, executors and administrators, each to the other, for the faithful observance of the terms of this agreement."

In submitting this agreement to the court and procuring the order of April 9th 1875, the parties acted in strict accordance with the decision of this court in Cotton v. Babcock, 14 P. F. Smith 462. It was there held that a suit in equity could not be referred under any section of the Act of June 16th 1836, but it was also said: "Parties to a proceeding upon the equity side of the court, no doubt may refer the case to persons mutually chosen to find and report facts to the court, whether called referees or masters is immaterial. There is nothing in the name. But on coming in of the report, it is the duty of the court, giving to it all the effect to which it is justly entitled, to proceed to make a final decree in the cause."

Courts ought certainly to encourage the settlement of law-suits by amicable reference, and enforce all agreements to make the decisions of such referees final and without appeal. It is the interest of the Commonwealth that there should be an end of litigation, and certainly this is true of controversies of the character of that now in question. It was not proper for the determination of a court. To examine and decide it intelligently they would have to devote as much time to it as did these masters, to the manifest denial of justice to all other suitors. It would take an entire term to hear and decide it as it ought to be heard and decided. The most liberal construction should be given to the terms of such agreements, in order to effectuate the intention of the parties to end their strife. They would be deprived of all their advantages, if after a full hearing before judges of their own choosing, the case must be reheard in court.

The great contention on the part of the appellant has been, that the masters exceeded their powers, and did not, in the mode of their decision, conform to the terms of the submission. The widest

[Hostetter's Appeal.]

range was taken in the oral and written argument. When we examine the broad terms in which the agreement is couched, it is not easy to comprehend how any matter, which was at any time in dispute, then or thereafter, would be beyond their reach. Undoubtedly the order of April 9th 1875, in some respects modified the agreement. It was no longer a simple arbitrament. It was no longer necessary or indeed proper, for the masters to file different decrees or awards in the several suits at law or in equity. The order, by the consent of the parties by necessary implication, consolidated the proceedings, so that one decree could finally determine all disputes. It is the favorite policy of courts of equity to do this. It follows, that every amendment necessary to give effect to the order was also necessarily implied. The learned court by reserving to itself, as it properly did, the entry of the final decree at the same time, reserved to itself the power of approving or modifying the decree, the form of which, they directed to be reported by the masters. Accordingly, both masters and parties so understood it. Exceptions were filed before the masters and in court—were heard and disposed of.

The stipulation, however, that there should be no appeal, remained unaffected by the order. An appeal could only be to this court. Under the original agreement, there was no appeal from the award—under the order converting it into a reference to the masters—there was no appeal to the chancellor. The only appeal that could be had, was from the final decree to this court. That was expressly waived. The court below heard all the exceptions to the proceedings of the masters, and the final decree of that court is without appeal. It is unnecessary, therefore, to examine the grounds or reasons of the appeal.

                                        Appeals quashed.